UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

AUTRONIC PLASTICS, INC., *doing business as* CLEAR-VU LIGHTING LLC,

        Plaintiff,

        v.

APOGEE LIGHTING, INC., APOGEE TRANSLITE, INC., APOGEE LIGHTING HOLDINGS, LLC, LYNNE B. ENTERPRISES INC., KLH CAPITAL MANAGEMENT, LLC, and KLH CAPITAL PARTNERS, L.P.,

        Defendants.

**MEMORANDUM & ORDER**
19-CV-6268 (MKB)

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Autronic Plastics, Inc., doing business as Clear-Vu Lighting LLC ("Clear-Vu"), a designer and manufacturer of light-emitting diode ("LED") lighting systems, commenced the above-captioned action on November 6, 2019, (Compl. ¶ 21, Docket Entry No. 1), against Apogee Lighting, Inc., Apogee Translite, Inc., Apogee Lighting Holdings, LLC, and Lynne B. Enterprises Inc. (collectively, "Apogee"), for infringement of United States Patent Nos. 9,625,139 (the "'139 Patent"), 9,909,748 (the "'748 Patent"), and 10,190,760 (the "'760 Patent") (collectively, the "patents-in-suit") under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking, *inter alia*, to enjoin Apogee from further infringement of the patents-in-suit. (*Id.* ¶¶ 27–47, 8–9.) Plaintiff filed an Amended Complaint on April 27, 2021, (Am. Compl., Docket Entry No. 91), and a Second Amended Complaint ("SAC") on August 3, 2021, reasserting claims against Apogee for direct infringement of the patents-in-suit and bringing claims against KLH Capital Management, LLC, and KLH Capital Partners, L.P. (collectively "KLH") for direct

and indirect willful infringement of the patents-in-suit.[1] (SAC ¶¶ 46–61, annexed to Mot. for Leave to File SAC as Ex. 1, Docket Entry No. 117-1.)

KLH moves to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff opposes the motion.[2] For the reasons set forth below, the Court denies KLH's motion to dismiss.

## I. Background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

Plaintiff is a New York corporation with operations in Central Islip, New York, (SAC ¶ 1), and is a designer and manufacturer of LED lighting systems, (*id.* ¶ 23). Apogee is a New York corporation based in Deer Park, New York, and Plaintiff's "main competitor (and indeed, only competitor in the New York City market)." (*Id.* ¶¶ 2, 24.) Plaintiff is the holder of the '139 Patent, titled "Modular LED Lighting Assembly," the '748 Patent, titled "LED Light Fixture for use in Public Transportation Facilities," and the '760 Patent, titled "LED Light Fixture for use in Public Transportation Facilities." (*Id.* ¶¶ 14–20.) Plaintiff alleges that KLH is ███████

---

[1] On November 18, 2020, Plaintiff moved for leave to amend the Complaint to add KLH, arguing that near the close of discovery it became apparent that "KLH is a majority owner of Apogee and controls Apogee's actions, including in connection with the products accused of patent infringement." (Letter dated Nov. 18, 2020, Docket Entry No. 59.) On April 21, 2021, Magistrate Judge Steven Tiscione granted Plaintiff leave to amend the Complaint to add KLH. (Min. Entry dated Apr. 21, 2021, Docket Entry No. 89.) On August 3, 2021, following oral argument, the Court granted Plaintiff leave to file a second amended complaint against KLH. (Min. Entry and Order dated Aug. 3, 2021.)

[2] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 130; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), annexed to Defs.' Mot. as Ex. 2, Docket Entry No. 130-2; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 132.)

██████ and directs and controls the business operations of Apogee, including in connection with the accused products. (*Id.* ¶ 26.)

### a. Allegations of infringement

Plaintiff contends that KLH and Apogee had knowledge of each of the patents-in-suit prior to the filing of the lawsuit but, nevertheless, Apogee "has not ceased selling infringing products, nor did Apogee contact [Plaintiff] regarding a request for a license to the patents-in-suit, or to engage in any good-faith discussions with [Plaintiff]," and KLH "continue[s] to direct and control Apogee to continue selling and offering to sell infringing products." (*Id.* ¶¶ 25, 28.) Based on this conduct, Plaintiff alleges that Apogee "knowingly and willfully infringed, and continues to knowingly and willfully infringe, the patents-in-suit" and that KLH "has knowingly and willfully infringed and induced infringement, and continues to knowingly and willfully infringe and induce infringement of the patents-in-suit." (*Id.* ¶ 36.)

### b. Allegations against KLH

Plaintiff alleges that as ██████████████ KLH "directs and controls the business operations of Apogee, including in connection with the accused products" and is ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* ¶ 26.) In addition, Plaintiff contends that KLH "directed Apogee on its selection of counsel for this case," (*id.*), and ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*id.* ¶ 27). ████████████████████████████████



3

████████████████████████████████████████████████████████████████

████████████████████████████████ (*Id.* ¶ 27.) ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ (*Id.* ¶ 27.)

KLH was made aware of the "patents-in-suit and Apogee's infringement when [Plaintiff] directly served a courtesy copy of the original Complaint in November [of] 2019," (*id.* ¶ 31), but also "knew of each of the patents-in-suit" prior to the commencement of this litigation, and nevertheless, "with knowledge of the patents-in-suit, continued to direct and control Apogee to continue selling and offering to sell infringing products," (*id.* ¶ 28). In addition, ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (*Id.* ¶ 31). ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* ¶ 32.) The correspondence describes ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ (*Id.* (first alteration in original).) ████████████████

████████████████████████████████████████████████████████████████

4

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ (*Id.*)

Despite this knowledge, KLH did not "itself contact[] nor direct[] and control[] Apogee to contact [Plaintiff] regarding a request for a license to the patents-in-suit, or to engage in any good-faith discussions with [Plaintiff]." (*Id.* ¶ 28.) Nor did KLH or Apogee consult "a patent attorney to further study and advise them on the issues." (*Id.*) In addition, KLH "has also already substantially participated in this lawsuit" by appearing under the representation of counsel and taking "positions in this case, including to oppose certain requested discovery, and to oppose the proposed amendment of the [C]omplaint to add KLH as a party." (*Id.* ¶ 29 (citation omitted).) Finally, Plaintiff alleges that KLH "through directing and controlling Apogee, derives and continues to derive substantial revenue from the sale of infringing products distributed within this judicial district before and after its knowledge of the patents-in-suit." (*Id.* ¶ 30.)

## II. Discussion

### a. Standard of review

To determine whether a patent pleading is sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court applies Second Circuit law. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378–79 (Fed. Cir. 2005) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of the regional circuits on non-patent issues."); *see also Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*, No. 15-CV-4442, 2016 WL 4224069, at *3 (S.D.N.Y. Aug. 9, 2016) ("In order to determine whether

5

[a patent] pleading is sufficient to survive [a] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must apply Second Circuit law." (alterations in original) (quoting *Regeneron Pharm., Inc. v. Merus B.V.*, No. 14-CV-1650, 2014 WL 2795461, at *1 (S.D.N.Y. June 18, 2014))); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017) ("To determine whether a patent pleading survives a Rule 12(b)(6) motion to dismiss, the [c]ourt applies Second Circuit law and follows the pleading standard set out in [*Twombly*] and [*Ashcroft*]."). In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

      **b.   Patent infringement claims against KLH**

KLH argues that Plaintiff has not pled facts sufficient "to support any theory of vicarious liability (alter ego, agency, or otherwise) against KLH," nor does Plaintiff "plead specific factual

6

allegations sufficient to support the elements of either a direct or an induced infringement claim against KLH." (Defs.' Mem. 1.) Accordingly, KLH argues that "[b]ecause [Plaintiff] has not stated any type of infringement claim, its willful infringement claims also fail." (*Id.* at 18.)

Plaintiff argues that "KLH's focus on 'alter ego' and 'piercing the corporate veil' is misplaced" as "[d]irect and induced infringement liability can be established without either of these theories," and Plaintiff has adequately pled KLH's direct and induced infringement of the patents-in-suit. (*See* Pl.'s Opp'n 1–2.) In addition, Plaintiff argues that because its "direct and induced infringement claims are sufficiently pled . . . [,] its willful infringement claim should also survive KLH's [m]otion to [d]ismiss." (*Id.* at 2.)

To withstand a motion to dismiss in a patent infringement case, a plaintiff must: "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013); *see also Bobcar Media, LLC*, 2017 WL 74729, at *3 (stating the "five elements of a patent infringement pleading" (quoting *Hall*, 705 F.3d at 1362)); *Digigan, Inc. v. Ivalidate, Inc.*, No. 02-CV-420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004) (same).

The parties do not dispute that Plaintiff (1) adequately alleges ownership of the patents; (2) names KLH as one of the alleged infringers; (3) adequately alleges Apogee's direct infringement of the patents-in-suit; (4) identifies by numbers the patents allegedly infringed; and (5) sufficiently identifies the sections of patent law invoked. (*See generally* Defs.' Mem.) The parties only dispute whether Plaintiff adequately states the means of infringement by KLH. Plaintiff alleges that KLH is liable for Apogee's conduct under theories of willful direct infringement and willful induced infringement.

7

### i. Plaintiff sufficiently alleges willful direct infringement

KLH argues that Plaintiff's "direct infringement claims against KLH fail" because (1) "[Plaintiff] does not (and cannot) allege KLH *itself* made, used, or sold" infringing products, (Defs.' Mem. 7–8); and (2) Plaintiff fails to sufficiently allege that KLH is either "the alter ego" of Apogee or "the agent" of Apogee, (*id.* at 10–16). In addition, KLH argues that because "[Plaintiff] has not stated any type of infringement claim, its willful infringement claims also fail." (*Id.* at 18.)

Plaintiff contends that it has plausibly pled a claim of willful direct infringement against KLH, on the grounds that "KLH 'directs and controls' the Apogee business such that KLH directly infringes the asserted patents," and that KLH's focus on "alter-ego" theory is misplaced as "the applicable law does not require a showing of alter ego, agency, or piercing the corporate veil to plead direct infringement liability based on one company's direction and control over another." (Pl.'s Opp'n 9–10.) Plaintiff argues that the SAC (1) ██████████ ██████████ ██████████ ██████████ (*id.* (quoting SAC ¶ 27)); (2) ██████████ ██████████ ██████████ ██████████ (*id.* at 11 (quoting SAC ¶ 27)); and (3) despite KLH's knowledge of the patents-in-suit prior to the commencement of litigation, KLH did not "itself contact[] nor direct[] and control[] Apogee to contact [Plaintiff] regarding a request for a license to the patents-in-suit, or to engage in any good-faith discussions with [Plaintiff]," (*id.* at 6 (quoting SAC ¶ 28)), but instead, ██████████ ██████████

8

██████████████ knowingly induced and encouraged infringement by attempting to ████████████████████████████████████████████████████ ████████████████████████████████ including one of the patents-in-suit, (*id.* at 7 (quoting SAC ¶ 32)).

An actor may be held liable for direct infringement based on another entity's actions where that actor directs or controls the other entity's performance. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (noting that liability may be imposed where "an entity directs or controls others' performance" (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (per curiam))); *see also Berall v. Pentax of Am., Inc.*, No. 10-CV-5777, 2021 WL 3934200, at *3 (S.D.N.Y. Sept. 2, 2021) (stating that "[a]n entity may be held responsible for direct[] infringement by another, however, 'in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise'" (quoting *Akamai Techs., Inc.*, 797 F.3d at 1022)). To determine whether an entity "directs or controls" another entity, the court applies traditional agency principles. *See Akamai Techs., Inc.*, 797 F.3d at 1022–23 ("In the past, we have held that an actor is liable for infringement under § 271(a) if it acts through an agent . . . ."); *see Berall*, 2021 WL 3934200, at *6 (dismissing the plaintiff's direct infringement claim where, *inter alia*, the plaintiff failed to "allege that any of the traditional elements of agency are present" among the defendants (citing *Akamai Techs., Inc.*, 797 F.3d at 1022)); *Ajinomoto Co. v. CJ CheilJedang Corp.*, No. 16-CV-3498, 2021 WL 4430200, at *6 (S.D.N.Y. Sept. 27, 2021) (finding plaintiff sufficiently alleged a principal-agent relationship in order to sustain a claim of patent infringement liability where, *inter alia*, the defendant "controls and directs the day-to-day

9

operations of [the subsidiary]"and "derives substantial revenue from the sales of the [allegedly infringing products] by [the subsidiary]").

"It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary."[3] *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). "However, a corporate parent may be held to account for the wrongs of its subsidiary (1) under an alter ego or veil-piercing analysis where the corporate parent has disregarded the subsidiary's corporate form, or (2) under traditional principles of agency." *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007); *see also Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194 (2d Cir. 2010) (Leval J., concurring) ("[The] principle of corporate separateness may be disregarded when a subsidiary acts as an agent of its parent."), *aff'd*, 569 U.S. 108 (2013); *British Telecomms. PLC v. IAC/Interactive Corp.*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (noting that imposing liability on the parent for the subsidiary's patent infringement "may be permissible under either of two distinct theories: (1) the alter ego theory, or (2) the agency theory" (citing *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. 13-CV-490, 2013 WL 6002850, at *3 (D. Del. Nov. 13, 2013))).

To allege liability based on the existence of a principal-agent relationship, "a plaintiff need only 'raise[] a sufficient inference that some sort of agency relationship existed between'

---

[3] Although Plaintiff does not explicitly allege that KLH is Apogee's "parent" corporation, Plaintiff's allegations that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and directs and controls the business operations of Apogee" and is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ can be construed to allege a parent-subsidiary relationship between KLH and Apogee. (SAC ¶ 26.)

10

the purported principal and agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (alteration in original) (quoting *Com. Fin. Servs., Inc. v. Great Am. Ins. Co. of N.Y.*, 381 F. Supp. 2d 291, 302 (S.D.N.Y. 2005)).  Under an agency theory, "the claim against the parent is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf — that is, in the name of the parent." *Sahu v. Union Carbide Corp.*, No. 04-CV-8825, 2012 WL 2422757, at *16 (S.D.N.Y. June 26, 2012) (quoting *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 412 (S.D.N.Y. 1996)), *aff'd sub nom*. *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96 (2d Cir. 2013).  Therefore, a parent may be held liable for the subsidiary's infringing activities if it has both (1) "'a direct financial interest in the infringing activity,' and (2) 'the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity.'" *Hecke v. Clear Channel Commc'ns, Inc.*, No. 04-CV-1583, 2005 WL 975837, at *2 (S.D.N.Y. Apr. 27, 2005) (citing *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994)); *see also AlexSam, Inc. v. Aetna, Inc.*, No. 19-CV-1025, 2020 WL 5502323, at *19 (D. Conn. Sept. 11, 2020) (noting that to establish liability of the parent company for the actions of its subsidiary, "[t]he plaintiff must show that the parent has a direct financial interest in the infringing activity, and that the parent has the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity" (alteration in original) (quoting *BroadVision Inc. v. Gen. Elec. Co.*, No. 08-CV-1478, 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009))).

Section 284 of the Patent Act gives courts discretion to "increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284; *see Hicks v. Tug PATRIOT*, 783 F.3d 939, 945 (2d Cir. 2015) (noting that under the Patent Act, the court "may increase the damages

11

up to three times the amount found or assessed" (quoting 35 U.S.C. § 284)).  "After infringement has been found, a patentee may offer proof of willful infringement, and the court is authorized to award up to treble damages if the patentee proves the 'requisite recklessness' on the part of the infringer." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 193 F. Supp. 3d 133, 142 (N.D.N.Y. 2016) (first quoting *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012); and then citing 35 U.S.C. § 284).

The Supreme Court has held that "district courts [should] exercise the discretion conferred on them" by 35 U.S.C. § 284 and impose enhanced damages where they determine that the infringing conduct is "egregious" and "typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105–06, 110 (2016) ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages . . . ."); *see also Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharms., Inc., C.A.*, No. 18-CV-2434, 2018 WL 5282887, at *2 (S.D.N.Y. Oct. 24, 2018) (stating that the Supreme Court has held that such enhanced damages are appropriate where a district court finds, in its discretion, the case before it to be an "egregious case[] of misconduct beyond typical infringement" (alteration in original) (quoting *Halo Elecs., Inc.*, 579 U.S. at 106)).  In addition, the Federal Circuit has held that "[u]nder *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1377 (Fed. Cir. 2020) (citing *Halo Elecs., Inc.*, 546 U.S. at 105).

"[T]o survive a motion to dismiss a claim of willful misconduct, a complaint must plausibly plead facts sufficient to support an inference that the infringement at issue is 'egregious' in addition to pleading subjective intent." *Novartis Vaccines & Diagnostics, Inc.*, 2018 WL 5282887, at *2 (first citing *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-72, 2017 WL

12

2462423, at *5 (N.D. Cal. June 7, 2017); and then citing *Jenkins v. LogicMark, LLC*, No. 16-CV-751, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017)); *see also Jenkins*, 2017 WL 376154, at *5 ("Therefore, the [c]ourt finds that, at a minimum, plaintiffs alleging willful infringement must plead facts sufficient to support an inference 'plausible on its face' that the alleged conduct is of the egregious nature described in *Halo Electronics*." (quoting *Twombly*, 550 U.S. at 570)). *But see Bobcar Media, LLC*, 2017 WL 74729, at *6 ("At a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of the specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage.").

Drawing all inferences in Plaintiff's favor, the SAC sufficiently alleges that (1) KLH is liable for direct infringement of the patents-in-suit based on an agency theory of liability, and (2) KLH willfully infringed the patents. First, Plaintiff alleges that KLH, "with knowledge of the patents-in-suit, continued to direct and control Apogee to continue selling and offering to sell infringing products." (SAC ¶ 28); *see Loftex USA LLC v. Trident Ltd.*, No. 11-CV-9349, 2012 WL 5877427, at *3 (S.D.N.Y. Nov. 20, 2012) (denying motion to dismiss the plaintiff's claim against the parent company where the plaintiff "alleges that [the parent] controls the factories that manufacture the infringing towels and that it is involved in the importation of these towels"); *cf. Microsoft Corp. v. Comput. Care Ctr., Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *7 (E.D.N.Y. Sept. 10, 2008) (imposing vicarious liability for copyright infringement where defendant "ha[d] the right and ability to supervise the infringing activity and ha[d] a direct financial interest in such activity"). Second, Plaintiff contends that KLH "through directing and controlling Apogee, derives and continues to derive substantial revenue from the sale of infringing products distributed within this judicial district before and after its knowledge of the

13

patents-in-suit." (SAC ¶ 30); *see Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 733–34 (S.D.N.Y. 1996) (noting that "[v]icarious liability may exist '[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of [the infringing materials]" (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963))).

Finally, in support of the continuing connection between KLH and Apogee with regard to the infringing activity, Plaintiff alleges that (1) ███████████████████████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███ These allegations are sufficient to establish that (1) KLH has a direct financial interest in the infringing activity and (2) KLH has the right and ability to supervise Apogee, which is demonstrated by a continuing connection between KLH and Apogee with regard to the alleged patent infringement. *See Ez-Tixz, Inc.*, 919 F. Supp. at 733 (imposing liability where the plaintiff "presented evidence that each of [the defendants] had some control over [the subsidiary] as well as a financial interest in the alleged acts of infringement"); *British Telecomms. PLC*, 356 F. Supp. 3d at 409–10 (noting that "evidence of agency required at the pleading stage is minimal" and finding patentee adequately alleged vicarious liability of the parent company where the

14

patentee pled non-conclusory facts that presented "a plausible factual scenario of close coordination and a joint strategy for the use . . . of the [patents-in-suit]"); *StrikeForce Techs., Inc*, 2013 WL 6002850, at *5 (finding the plaintiff's allegations sufficient to support liability under an agency theory as they "suggest a close connection in the operations of the two companies, making it reasonable to infer [that the parent] authorized or directed" the infringing conduct, and noting that "[m]erely showing the commingling of [parent and subsidiary] may be insufficient to ultimately succeed on agency, but it is adequate to survive a motion to dismiss at this stage in litigation"); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (denying the defendant's motion for summary judgment where the plaintiff presented evidence that the defendant was the parent corporation and directed activities of its subsidiary, including that correspondence relevant to the litigation was sent through an email account associated with the parent company).

In addition, Plaintiff adequately pleads willful direct infringement, as Plaintiff alleges that despite KLH's knowledge of the patents-in-suit prior to the commencement of litigation, KLH did not "itself contact[] nor direct[] and control[] Apogee to contact [Plaintiff] regarding a request for a license to the patents-in-suit, or to engage in any good-faith discussions with [Plaintiff]," (SAC ¶ 28), but instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶ 32); *see Finjan, Inc.*, 2017 WL 1063475, at *4 (denying motion to dismiss the plaintiff's willful infringement allegations where the plaintiff alleged that the defendant continued to infringe despite being on notice of the allegations of infringement "and [attending] related meetings between the parties to address those contentions").

    **ii. Plaintiff sufficiently alleges that KLH willfully induced infringement**

KLH argues that Plaintiff fails to state a claim for induced infringement because

15

(1) "[Plaintiff] has failed to plausibly allege that KLH had the specific intent to encourage any third party to infringe [Plaintiff's] patents" and instead "relies on conclusory allegations of intent without sufficient supporting factual allegations," (Defs.' Mem. 17); and (2) "[Plaintiff's] SAC contains no allegations of any specific, affirmative act taken by KLH to encourage a third party's infringement," (*id.* at 18). In addition, KLH argues that because Plaintiff fails to state a claim for induced infringement, its willful infringement claim likewise fails. (*Id.* at 18.)

Plaintiff argues that that it sufficiently alleges that KLH willfully induced Apogee's infringement because KLH, "with actual knowledge of [Plaintiff's] asserted patents, intend[ed] to direct and control Apogee's manufacture, use, sale, and/or offer for sale of infringing products." (Pl.'s Opp'n 12.) In support, Plaintiff argues that KLH exhibited specific intent to induce Apogee's infringement as (1) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*id.* at 13–14); (2) during these conversations "[Plaintiff's] CEO described patents in '[e]mergency batteries, fixture designs, [and] 600 volt power connections' — a reference to the patents asserted in this case," (*id.* at 14 (second and third alterations in original)); and (3) "KLH received notice on or around September [of] 2019, complete with claim charts, that Apogee's products were infringing [Plaintiff's] patents," (*id.* at 13).

"In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (quoting

16

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)); *see also Pado, Inc. v. SG Trademark Holding Co., LLC*, --- F. Supp. 3d ---, ---, 2021 WL 1723419, at *5 (E.D.N.Y. Apr. 29, 2021) ("To state a claim for induced patent infringement, a plaintiff must plead (1) that the patent was directly infringed, (2) that the defendant 'knowingly induced infringement,' and (3) that the defendant 'possessed specific intent to encourage another's infringement.'" (quoting *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1349 (Fed. Cir. 2019))). "To adequately plead knowledge, a plaintiff must allege that a defendant both 'knew of the patent and knew as well that the induced acts constitute patent infringement.'" *Id.* (quoting *Enplas Display Device Corp.*, 909 F.3d at 407). "The weight of authority in this circuit indicates that a plaintiff may plead a defendant's knowledge and intent as of the date the suit was filed." *Id.* (citing *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 254 (E.D.N.Y. 2016)); *Carson Optical Inc.*, 202 F. Supp. 3d at 254 ("[T]he filing of a federal complaint identifying the patents-in-suit satisfies the requirement that a plaintiff plead a defendant's knowledge of the patents-in-suit.").

"To adequately plead specific intent, a plaintiff must allege (1) that the defendant 'intended to cause the acts that constitute the direct infringement' and (2) that the defendant 'kn[ew] or should have known [that] its actions would cause the direct infringement[.]" *Pado, Inc.* --- F. Supp. 3d. at ---, 2021 WL 1723419, at *5 (alterations in original) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008)). Direct evidence is not required to plead specific intent, circumstantial evidence may suffice. *See Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 168 (E.D.N.Y. 2018) (citing *Carson Optical*, 202 F. Supp. 3d at 253); *see also Ausco Prods., Inc. v. Axle, Inc.*, No. 19-CV-6798, 2020 WL 7028521, at *2 (W.D.N.Y. Nov. 30, 2020) (citing *Uni-Sys., LLC*, 350 F. Supp. 3d at 168) (same).

Plaintiff sufficiently states a claim for willfully induced infringement. Plaintiff alleges that KLH "knew of each of the patents-in-suit prior to the filing of [the] Complaint," (SAC ¶ 28), and that "KLH was further informed regarding [Plaintiff's] patents-in-suit and Apogee's infringement when [Plaintiff] directly served a courtesy copy of the original Complaint in November [of] 2019," (*id.* ¶ 31). Therefore, Plaintiff sufficiently alleges KLH's knowledge of the patents-in-suit. *See Pado, Inc.*, --- F. Supp. 3d at ---, 2021 WL 1723419, at *5 (holding that the complaint adequately alleged the defendants' knowledge as the plaintiffs claimed that the defendants became aware of the patent-in-suit and the fact that the accused product infringed that patent "when the summons and original complaint were served, and yet continued to encourage and induce the [the defendants] to sell the infringing device"); *see also SEB, S.A. v. Montgomery Ward & Co.*, 412 F. Supp. 2d 336, 344 (S.D.N.Y. 2006) (finding that the plaintiff sufficiently alleged liability where the plaintiff became aware of the patent at least as early as the start of litigation but "continued to sell [the allegedly infringing product], or a similar version, until . . . [the court] issued his second preliminary injunction against [the] [d]efendants" (citing *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed. Cir. 2004))). *But see Pfizer, Inc. v. Gelfand*, No. 08-CV-2018, 2008 WL 2736019, at *1 (S.D.N.Y. July 9, 2008) (suggesting without further discussion that plaintiff had to allege "that [the defendant] was aware or should have been aware" of the patent "prior to the commencement of [the] action").

Plaintiff's allegations based on circumstantial evidence are likewise sufficient to establish that KLH was on notice of the alleged infringement and demonstrated specific intent to cause direct infringement by continuing to direct the sale of the infringing products. (*See* SAC ¶¶ 26, 28 (alleging that "with knowledge of the patents-in-suit, [KLH] continued to direct and control Apogee to continue selling and offering to sell infringing products," including by ▓▓▓▓

18

███████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████
████████████████ *see also Crypto Rsch., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686-87 (E.D.N.Y. 2017) ("[I]n light of the fact that the defendants' products are allegedly infringing, and drawing all reasonable inferences in the plaintiff's favor, the mere sale of the allegedly infringing product is enough to plead the defendants' intent to induce . . . infringement." (citing *Conair Corp. v. Jarden Corp.*, No. 13-CV-6702, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014))); *see also Conair*, 2014 WL 3955172, at *3 (finding sufficient to survive motion to dismiss the plaintiff's allegation that the defendant "did not stop manufacturing, importing, offering to sell, [or] selling" its machines after the plaintiff notified the defendant of its patent and indicated the specific infringing model numbers (alteration in original)).

Plaintiff also adequately alleges that KLH willfully induced Apogee's infringement by engaging in deceptive correspondence with Plaintiff's CEO in an effort to obtain information about the patents-in-suit and continuing to direct and control the sale of the accused products without seeking the advice of counsel. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1365–70 (Fed. Cir. 2006) (affirming the district court's finding of willfully induced infringement where the defendant was on notice of infringement prior to the start of litigation but continued infringing conduct and only sought advice from counsel after the commencement of litigation).

19

### III. Conclusion

For the foregoing reasons, the Court denies KLH's motion to dismiss.

Dated: December 6, 2021
       Brooklyn, New York

SO ORDERED:

 s/ MKB
MARGO K. BRODIE
United States District Judge